## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Patrick Michael Jordan and<br>Madonna Carey Jordan,<br><br>Debtors. | Case No. 20-02423-dd<br><br>Chapter 7<br><br>**ORDER SUSTAINING OBJECTION<br>TO EXEMPTION** |

This matter is before the Court on an objection to exemption filed by chapter 7 trustee Michelle L. Vieira on September 21, 2020. The debtors Patrick Michael Jordan and Madonna Carey Jordan filed a response on October 19, 2020. The Court held a hearing on November 17, 2020. At the conclusion of the hearing the Court took the matter under advisement and now issues this order.

### BACKGROUND AND ARGUMENTS OF THE PARTIES

The debtors commenced their chapter 7 bankruptcy case on June 5, 2020. On their schedules the debtors listed numerous bank accounts containing funds, including a Coastal States Bank account with $32,154.20 and two Wells Fargo accounts containing $38.13[1] and $420.98. On their Schedule C, the debtors claimed exemptions in the entire amounts contained in these accounts pursuant to S.C. Code Ann. § 15-39-410.[2] The parties stipulated that the funds at issue are earnings from Dr. Jordan's employment as a physician. The schedules also disclosed a Coastal States Bank checking account containing $46,169.67, from a recovery for a personal injury, and the debtors claimed an exemption in those funds pursuant to S.C. Code Ann. § 15-41-30(A)(12)(b). Finally, the schedules disclosed a second Coastal States Bank checking account

---

[1] The debtors' Schedule B indicates that the amount in the account is $38.13, but their Schedule C attempts to claim an exemption in the amount of $138.13.
[2] The debtors filed an amended Schedule C on July 24, 2020, claiming the same exemption amounts.

with a balance of $7,735.16. The funds in that account were claimed as exempt pursuant to S.C. Code. Ann. § 15-41-30(A)(5) and (A)(7). The S.C. Code Ann. § 15-41-30 exemptions are not at issue.

The trustee objects to the S.C. Code Ann. § 15-39-410 exemption because she asserts that the funds are liquid assets subject to the statutory exemption limit in S.C. Code § 15-41-30(5), which has been exhausted, and because S.C. Code Ann. § 15-39-410 does not apply in bankruptcy proceedings. The debtors respond that in addition to the exemptions set forth in S.C. Code § 15-41-30, South Carolina has enacted numerous other statutes that can be used as exemptions in bankruptcy proceedings. The debtors argue that S.C. Code § 15-39-410 is one such section and that the history of the amendments of that section make it clear that the legislature intended to protect as exempt all earnings for personal services. The debtors also argue that under the Bankruptcy Code, the trustee is limited to the status and rights of a judicial lien creditor and therefore is not entitled to reach the debtors' personal earnings under S.C. Code § 15-39-410.

## **ANALYSIS**

When the debtors filed their bankruptcy case, an estate was created which consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541; *In re Holt*, 497 B.R. 817, 824 (Bankr. D.S.C. 2013). Section 522(b) of the Bankruptcy Code allows debtors to exempt certain property from the estate, and offers the debtor a choice between utilizing the exemptions set forth in § 522(d) or using the exemptions provided by federal nonbankruptcy law and state law, unless applicable state law provides otherwise. *Holt*, 497 B.R. at 824 (citing *In re Robinson*, 292 B.R. 599, 607 (Bankr. S.D. Ohio 2003)). South Carolina has opted out of the § 522(d) exemptions and provides its own exemptions, in

order to "protect from creditors a certain portion of the debtor's property." *Id.* (quoting *Cerny v. Salter*, 311 S.C. 430, 429 S.E.2d 809, 811 (1993)). "Exemptions find a genesis in the public policy of preserving for debtors certain property that is free from creditor claims, levy, and attachment. '"The historical purpose of . . . exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge."'" *Id.* at 824-25 (quoting *Sheehan v. Morehead (In re Morehead)*, 283 F.3d 199, 206 (4th Cir. 2002)).

Black's Law Dictionary defines an exemption as "a privilege given to a judgment debtor by law, allowing the debtor to retain certain property without liability." The United States Supreme Court has also discussed exemptions in the context of bankruptcy, stating:

> An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor. . . . Property that is properly exempted under § 522 is (with some exceptions) immunized against liability for prebankruptcy debts.

*Owen v. Owen*, 500 U.S. 305, 308 (1991). The United States Supreme Court has also stated that exemptions in bankruptcy

> effectuate a careful balance between the interests of creditors and debtors. On the one hand, . . . "every asset the Code permits a debtor to withdraw from the estate is an asset that is not available to . . . creditors." On the other hand, exemptions serve the important purpose of "protect[ing] the debtor's essential needs."

*Clark v. Rameker*, 573 U.S. 122, 129 (2014) (internal citations omitted). In *Clark*, the Court examined a claim of exemption by a chapter 7 debtor in funds in an inherited IRA account. The Court pointed out that nothing about the legal characteristics of the IRA would prevent the debtor from using the funds on luxuries such as a vacation home or a sports car immediately after completing the chapter 7 bankruptcy case. The Court stated, "Allowing that kind of exemption would convert the Bankruptcy Code's purposes of preserving debtors' ability to meet

3

their basic needs and ensuring that they have a 'fresh start,' into a 'free pass.'" *Clark*, 573 U.S. at 129 (internal citations omitted).

A number of South Carolina's exemptions are set forth in S.C. Code Ann. § 15-41-30, including the homestead exemption, motor vehicle exemption, household furnishing exemption, an exemption in individual retirement accounts, and relevant to this case, an exemption in cash and other liquid assets. However, there are also exemptions found throughout the South Carolina Code, including S.C. Code Ann. § 38-63-40,[3] S.C. Code Ann. § 59-2-140,[4] S.C. Code Ann. § 43-5-190,[5] and S.C. Code § 41-39-20.[6]

In this case, the Court must decide whether the statute the debtors are attempting to use, S.C. Code § 15-39-410, confers an exemption or is in the nature of an anti-garnishment statute. In South Carolina, garnishment is generally not permitted, except in a few limited circumstances. For example, S.C. Code Ann. § 37-5-104 states, "With respect to a debt arising from a consumer credit sale, a consumer lease, a consumer loan, or a consumer rental-purchase agreement, regardless of where made, the creditor may not attach unpaid earnings of the debtor by

---

[3] Subject to certain exceptions, "Proceeds and cash surrender values of life insurance payable to a beneficiary other than the insured's estate in which such proceeds and cash surrender values are expressed to be for the primary benefit of the insured's spouse, children, or dependents are exempt from creditors of the insured whether or not the right to change the beneficiary is reserved and whether or not the policy is payable to the insured if the beneficiary dies first."
[4] "The SCCIP trust fund, contributions to the SCCIP trust fund, and the right of a person to a refund of contributions or any other right accrued or accruing to any person under the provisions of this chapter are exempt from attachment, garnishment, levy, and sale under any means or final process issued by any court or bankruptcy proceeding and are unassignable except as specifically otherwise provided in this chapter."
[5] "All amounts paid or payable as assistance shall be exempt from any tax levied by the State or any subdivision thereof, shall be exempt from levy and sale, attachment or any other process whatsoever, and shall be inalienable and unassignable in advance in any form and, in case of bankruptcy, shall not pass to the trustee or other person acting on behalf of the creditors of the recipient of assistance."
[6] "No assignment, pledge, or encumbrance of any right to benefits which are or may become due or payable under Chapters 27 through 41 of this title is valid and such rights to benefits are exempt from levy, execution, attachment, or any other remedy whatsoever, provided for the collection of debt, except as provided for in Section 41-35-140 of this title. Benefits received by an individual, so long as they are not mingled with other funds of the recipient, are exempt from any remedy whatsoever for the collection of all debts except those incurred for necessaries furnished to such individual or his spouse or a dependent during the time when such individual was unemployed. No waiver of any exception provided for in this section is valid."

garnishment or like proceedings." Conversely, South Carolina does allow income tax refunds to be garnished if an individual fails to comply with financial responsibility requirements set forth in the motor vehicle title of the Code,[7] and permits garnishment for child support[8] and unpaid taxes.[9]

      S.C. Code Ann. § 15-39-410, states, "The judge may order any property of the judgment debtor, not exempt from execution, in the hands either of himself or any other person or due to the judgment debtor, to be applied toward the satisfaction of the judgment, except that the earnings of the debtor for his personal services cannot be so applied." This provision is in the chapter of the Code regarding executions and judicial sales under the article regarding discovery, arrest,[10] garnishment, receivers and the like. The plain language of the statute authorizes the judge to order any property of a judgment debtor, including debts owed the debtor, by whomever held, subject to execution to satisfy a judgment, other than exempt property or earnings from personal services. The statute provides that property not exempt from execution can be applied to satisfy a judgment, <u>except</u> for earnings of the debtor for personal services. This creates three categories of property: exempt property, earnings from personal services, and all other property. The exclusion of personal services earnings separate and apart from the exclusion of property exempt from execution suggests that the exclusion of the personal services earnings is not an exemption. Further, the statute does not exempt personal services income from all court processes, but protects personal service income from execution only. The statute references property in the context of executions upon judgment and is not ambiguous. *See Crespo v.*

---

[7] S.C. Code Ann. § 56-1-288.
[8] S.C. Code Ann. § 63-17-1420.
[9] S.C. Code Ann. § 12-54-130.
[10] This article authorizes a warrant to arrest a debtor and bring him before a judge for examination in limited circumstances. S.C. Code Ann. § 15-39-320.

*Holder*, 631 F.3d 130, 133 (4th Cir. 2011) ("When interpreting statutes we start with the plain language. It is well established that when the statute's language is plain, the sole function of the courts-at least where the disposition required by the text is not absurd-is to enforce it according to its terms.") (cleaned up).

      A review of South Carolina's exemption statutes reinforces the importance of this limited application. The exemption statutes provide that the property the statute allows a debtor to exempt is protected from the reach of creditors in all types of proceedings. For example, S.C. Code Ann. § 15-41-30 states that the property listed in that section is exempt from "attachment, levy, and sale under any mesne or final process issued by a court or bankruptcy proceeding." S.C. Code Ann. § 38-63-40 broadly provides that certain life insurance proceeds are "exempt from creditors." S.C. Code Ann. § 59-2-140 contains nearly the same language as § 15-41-30, stating that the South Carolina College Investment Program trust fund, contributions to the fund, and any rights accruing under the chapter addressing the trust fund are "exempt from attachment, garnishment, levy, and sale under any means or final process issued by any court or bankruptcy proceeding." And S.C. Code Ann. § 43-5-190 states that amounts paid as assistance shall be exempt from tax, "shall be exempt from levy and sale, attachment or any other process whatsoever," and states that in the case of bankruptcy, "shall not pass to the trustee." These Code sections, and the other exemption statutes in the South Carolina Code, protect stated property interests from any process a creditor seeks to use to obtain the property. However, S.C. Code § 15-39-410 only protects a debtor's personal earnings in one specific situation—where a judge is ordering execution to satisfy a judgment. S.C. Code § 15-39-410 does not address other court processes or bankruptcy proceedings. This was recognized in *McKelvay v. South Carolina Railroad Co.*, 6 S.C. 446 (1876), in which the South Carolina Supreme Court interpreted an

6

earlier version of this statute and permitted the attachment of personal services earnings.[11] Thus, S.C. Code Ann. § 15-39-410 differs in a significant respect from South Carolina's other exemption statutes.

The history of S.C. Code Ann. § 15-39-410 further indicates that South Carolina did not enact S.C. Code Ann. § 15-39-410 as an exemption statute. In 1870, South Carolina first enacted the statute precluding a judge from ordering a judgment debtor's earnings for personal services to be applied to satisfy a judgment in certain situations. Philip T. Lacy, *South Carolina's Statutory Exemptions and Consumer Bankruptcy*, 30 S.C. L. Rev. 643, 660-61 (1979). Specifically, the debtor had to establish that the income was earned within the sixty days prior to the supplementary proceedings order and that the earnings were necessary for the debtor's family support. *Id.* at 661. In his article, Professor Lacy notes that the statute was enacted in connection with South Carolina's adoption of the Field Code. Its existence as part of the evolution of "code pleading" in South Carolina reinforces the view that the statute limits the reach of judicial orders in aid of execution but not otherwise. The statute was amended in 1960 to provide that a judgment creditor could garnish the debtor's "wages, salary, fees, or commissions due or to become due under any existing contract of employment," but the amount to be garnished could not exceed fifteen percent of the debtor's earnings or $100.00. *Id.* at 662. In 1974, the statute was again amended to the current language, which prevents a judge from ordering execution against any of a debtor's earnings for personal services in satisfaction of a judgment. *Id.* at 662-63.

The debtors argue that the 1974 amendment of the statute evidences an intention to exempt earnings for personal services. However, previous versions of the statute were not

---

[11] Later federal cases limit prejudgment attachment against consumers pursuant to the due process clause. Nevertheless, *McKelvay* has not been overruled.

7

exemption statutes, but related to pleading and the process of judgment execution. The removal of limitations in amount and purpose did not convert the statute into a general exemption statute. The South Carolina legislature has enacted a number of exemption statutes containing clear language protecting debtor property from all court processes and creditor claims. The legislature knows how to create an exemption and if it intended to do so as to S.C. Code Ann. § 15-39-410, it could have done so, but did not.

Another bankruptcy judge in this district has considered S.C. Code Ann. § 15-39-410 in slightly different contexts and reached conclusions consistent with this order. In *In re Davis*, C/A No. 99-00358-W, 1999 WL 33486078 (Bankr. D.S.C. May 28, 1999), the chapter 7 debtors claimed S.C. Code Ann. § 15-39-410 in an effort to exempt unpaid commissions earned by the debtor as an independent contractor. Judge Waites found that the statute did not extend to independent contractor earnings.[12] Judge Waites also pointed out, in response to the trustee's argument that this Code section does not apply in bankruptcy cases, "Clearly the state legislature can indicate whether a statute is applicable to a bankruptcy proceeding and they have not done so in regards to § 15-39-410." *Davis*, 1999 WL 33486078, at *6.

In *In re Strong*, C/A No. 94-75489, 1995 WL 1930448 (Bankr. D.S.C. Apr. 14, 1995), the debtor claimed S.C. Code Ann. § 15-39-410 in seeking to exempt real estate commissions. This decision is consistent with an early state Supreme Court decision[13] limiting the scope of "personal earnings" and excluding attorney fees. Judge Waites further stated:

> Based upon a literal reading of the statute, it appears that this statute was [interpreted] to apply in instances of supplemental proceedings or instances of

---

[12] Debtors cite a recent opinion of a master in equity discussing and declining to follow Judge Waites' *Davis* decision as it might apply to so called "1099" income and emphasizing the evolving nature of workplace income in a "gig economy." *Cinder Creek Partners (SC) LLC v. John David Madison, Elizabeth Love Madison, and Sermet's Downtown*, C/A No. 2018-CP-10-02360 (July 1, 2019). The master in equity was dealing with earnings in an execution upon judgment context. His analysis did not extend to a bankruptcy context, nor would one expect it to.

[13] *Union Bank v. Northrop*, 19 S.C. 473 (1883).

>execution of judgments and not in bankruptcy proceedings. This court notes that the general state exemption [statutes], S.C. Codes § 15-41-310, et. seq., enacted by the legislature as part of this state's opt out of the federal bankruptcy exemptions under 11 U.S.C. § 522(b), specifically refers to and makes exemptions under that statute applicable to bankruptcy proceedings. It is reasonable to infer that if the state legislature intended § 15-39-410 to apply in bankruptcy proceedings, it would have so stated.

*Strong*, 1995 WL 1930448, at *3.

Other jurisdictions have also considered similar efforts by debtors to use state garnishment statutes to exempt personal earnings, to no avail. In *In re Slane*, 537 B.R. 864 (Bankr. N.D. Ohio 2015), the debtor attempted to exempt, under an Ohio statute, amounts garnished pre-petition by a judgment creditor. The chapter 7 trustee objected. The Ohio statute at issue stated that a person domiciled in the state may hold certain property "exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order," including, subject to certain exceptions, "personal earnings of the person owed to the person for services in an amount equal to the greater of the following amounts . . . [s]eventy-five per cent of the disposable earnings owed to the person." The court found that the debtor already had the benefit of the statute's exemption at the time his wages were subject to garnishment pre-petition; therefore, the debtor could not use the statute again to claim the garnished funds as exempt in his bankruptcy case.

In *In re Johnson*, 593 B.R. 331 (Bankr. D. N.M. 2018), the chapter 7 debtors attempted to use New Mexico's wage garnishment statute to exempt funds deposited into their checking account pre-petition. The chapter 7 trustee and a creditor both objected to the exemption. The statute at issue set forth amounts of a defendant's "disposable earnings" that were exempt from garnishment for child support and for other situations. "Disposable earnings" is defined in the statute as "that part of a defendant's wage or salary remaining after deducting the amounts which

9

are required by law to be withheld." The court found that the garnishment statute applied only to wages or salary due to the debtor by their employer and did not apply to those wages or salary once they were paid to the debtor. Accordingly, the wage garnishment statute was not available to exempt funds in a bank account in the chapter 7 debtors' bankruptcy case.

In *Lawrence v. Jahn (In re Lawrence)*, 219 B.R. 786 (E.D. Tenn. 1998), the debtor attempted to exempt a portion of accounts receivable from his medical practice in his bankruptcy pursuant to a Tennessee garnishment statute. The chapter 7 trustee objected. The statute at issue set limits on the amount of an individual's disposable earnings subject to garnishment "for any workweek." The court acknowledged that "state exemption statutes are applicable to cases under the Bankruptcy Code to no greater or lesser extent than that authorized by Congress in § 522(b)." *Id.* at 791 (citing *In re Butcher*, 189 B.R. 357, 371-72 (Bankr. D. Md. 1995), *aff'd*, 125 F.3d 238 (4th Cir. 1997)). The court found that "exempt" as used in § 522(b) was unambiguous and meant that the property "that is exempt is the property the debtor can forever sequester to himself and place completely beyond the reach of his creditors." *Id.* at 791-92. The court then looked at other Tennessee exemption statutes and found that the garnishment statute was "fundamentally different" from the other exemption statutes because it did not contain "broad language that completely and permanently exempts a debtor's earnings from the reach of creditors through judicial process." *Id.* at 792-93. Therefore, the court found that the statute was not available as an exemption for disposable earnings in bankruptcy proceedings. The court pointed out that the statute only allows the funds to be protected from garnishment if they are in the hands of a third-party garnishee and that once they are in the debtor's possession, the Tennessee statute provides no exemption protection.

Other courts have reached similar conclusions. *See In re Resler*, 282 B.R. 246 (Bankr. D. Kan. 2002) (holding that chapter 7 debtors were not entitled to use state statute placing limits on amounts of garnishment of a debtor's disposable earnings to exempt wages deposited in their bank account); *In re Parsons*, 437 B.R. 854 (Bankr. E. D. Mo.. 2010) (finding that chapter 7 debtor could not exempt funds in a bank account using Missouri's statute limiting amounts of garnishment of a debtor's aggregate earnings because the statute was not a "valid bankruptcy exemption statute.").[14] While the state statutes at issue in these cases differ from the South Carolina statute at issue in this case,[15] and the facts and precise issues in these cases are not identical to those here, these cases make clear that many courts are unwilling to extend the benefit of a statute protecting earnings from garnishment to a debtor in a bankruptcy case, especially once the funds have actually been received and are being held by the debtor. Thus, the reasoning of these cases is persuasive here.

The debtors argue that under 11 U.S.C. § 544, the trustee is limited to the rights of a judgment lien creditor for whom a nulla bona execution has been returned. As a result, the trustee is limited to only those rights that a judgment creditor has under S.C. Code Ann. § 15-39-410. It is true that a bankruptcy trustee has the rights of a judicial lien creditor; however, this is not the only right, capacity, or status of the trustee during the case. Bankruptcy fiduciaries can

---

[14] However, there are courts that have reached the opposite conclusion as well. *See Yaden v. Robinson (In re Robinson)*, 241 B.R. 447 (B.A.P. 9th Cir. 1999) (finding that chapter 7 debtors could use Oregon statutes to exempt accrued but unpaid earnings in bankruptcy. One statute excluded a portion of accrued but unpaid earnings from garnishment and the other expressly provided that funds protected from wage garnishment "remain exempt" once in in debtors' deposit account.); *In re Sanders*, 69 B.R. 569 (Bankr. E.D. Mo. 1987) (allowing debtors to use Missouri garnishment statute to exempt unpaid prebankruptcy earnings); *In re Delima*, 561 B.R. 647 (Bankr. E.D. Va. 2016) (finding that earnings do not lose exempt status under Virginia statute extending to courts or agencies "mak[ing], execut[ing], or enforc[ing] any order or process . . ." and expressly providing "[t]he exemptions allowed herein shall be granted to any person so entitled without any further proceedings" even after deposited into a debtor's bank account, and therefore allowing the debtors to exempt such funds). These cases are distinguishable.

[15] For example, the reference in the South Carolina statute to property in the hands of the debtor extends to the "all property" phrase and not to the earnings phrase, unlike the statute in *Lawrence*, which only protected funds in the hands of a third-party garnishee from garnishment.

use, sell, or lease property of the estate. 11 U.S.C. § 363. Chapter 7 trustees are tasked with liquidating nonexempt property of the estate and distributing the proceeds to creditors in accordance with the Bankruptcy Code. 11 U.S.C. § 704; *In re Broughton*, 619 B.R. 596, 619 (Bankr. E.D.N.C. 2020). The trustee is not limited to only the rights of judgment creditors. The funds at issue here are nonexempt property of the estate. The trustee is entitled to reach these funds and distribute them to the debtors' creditors.

## **CONCLUSION**

For the reasons set forth above, the chapter 7 trustee's objection to the debtors' exemption is sustained. The funds in the debtors' accounts are nonexempt property of the estate.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**12/15/2020**



Entered: 12/15/2020

David R. Duncan
US Bankruptcy Judge
District of South Carolina